### S97A1204. FRIEDMAN et al. v. TEPLIS et al.
(492 SE2d 885)

FLETCHER, Presiding Justice.

At issue in this case is a court's equitable power to modify a trust. Appellants are trustees of a trust and appellees are the settlors and beneficiaries of the trust. All parties sought a modification of the trust under OCGA § 53-12-153 based on an unanticipated change of circumstances. The trial court denied the modification. Because the trial court did not abuse its discretion in concluding that appellants had not shown clear and convincing evidence to warrant modification, we affirm.

The evidence presented to the trial court by affidavit and testimony showed that the settlors of the trust were brothers Gary and Louis Teplis. The settlors desired to establish a family trust to be funded with insurance proceeds from a "last-to-die" policy on the lives of their parents, Monica and Nathan Teplis. Monica and Nathan consented to this arrangement and are referred to as the "Insured" in the trust instrument. The settlors presented little evidence as to the purpose of the trust and the trial court made no finding as to the trust's purpose. Whatever the purpose, there is evidence showing that the intention was for the trust to distribute the insurance proceeds as soon as it received them into separate "spray trusts"[1] for the benefit of Gary and Louis and their descendants. However, the trust instrument also specifies that the insurance proceeds will be distributed into the spray trusts "upon the death of the last to die of the Insured," which was consistent with the original "last-to-die" policy. Sometime later, however, the trustees acquired a

---

[1] A spray or sprinkling trust is one in which the trustee has the discretion to either accumulate or distribute income. Black's Law Dictionary (6th ed. 1990).

life insurance policy on Nathan's life alone and subsequently surrendered the last-to-die policy.

When Nathan died in December 1996, the trust received the proceeds of the insurance policy on his life. Because of the trust language permitting distribution only upon the last-to-die, the trustees were unable to distribute the proceeds into the separate spray trusts. An estate and tax planning lawyer testified that, if the trust is unable to distribute the proceeds to the spray trusts until Monica's death, the trust would suffer serious tax consequences and that this could not logically have been intended by the settlors.

1. OCGA § 53-12-153 allows a court to modify the terms of a trust if it is established by clear and convincing evidence that, owing to circumstances not known to or anticipated by the settlors, compliance would substantially impair the purposes of the trust.[2] This statute gives courts equitable powers of modification in extraordinary circumstances to change administrative or other terms, but only when the intent of the settlor would be defeated by circumstances unanticipated or unknown at the time of the trust's establishment. This statute was enacted in 1991 and we have not previously had occasion to interpret it. Other states, however, have granted such equitable powers to their courts for many years and this body of law is instructive.[3]

Other courts have permitted trustees to do a variety of acts not authorized by the terms of the trust, including to make certain types of investments;[4] to pay benefits past a trust imposed deadline,[5] and to sell trust property.[6] Similarly, the courts have recognized a variety of "unanticipated circumstances" that may support modification, including a change in tax or other laws[7] and a settlor's mistaken view regarding the effect of tax laws.[8] These cases and the commentators make clear that no hard and fast rules exist; rather, the most important issue for the trial court is whether the denial of the modification will impair the purpose of the trust.[9]

---

[2] This power was recognized, but not frequently utilized, in the common law. See *Bedgood v. Thomas*, 220 Ga. 262 (138 SE2d 313) (1964) (noting that court of equity "may, under certain circumstances, modify the terms of a trust").

[3] See *In re Wolcott*, 56 A2d 641 (N.H. 1948), cited in comment to OCGA § 53-12-153; see also George G. Bogert & George T. Bogert, *The Law of Trusts & Trustees*, § 561 at 234 (Rev. 2d ed.).; Austin W. Scott & William F. Fratcher, IIA *The Law of Trusts*, § 167 (4th ed.).

[4] *Second Ecclesiastical Society v. Attorney General*, 48 A2d 266 (Conn. 1946).

[5] *Donnelly v. Nat. Bank of Washington*, 179 P2d 333 (Wash. 1947).

[6] *Wachovia Bank & Trust Co. v. Johnston*, 153 SE2d 449 (N.C. 1967).

[7] *Hardy v. Bankers Trust Co. of New York*, 44 A2d 839 (N.J. 1945); *Tinnin v. First United Bank of Mississippi*, 570 So2d 1193 (Miss. 1990).

[8] *Miller v. Nat. Bank of Detroit*, 38 NW2d 863 (Mich. 1949).

[9] See, e.g., *Industrial Trust Co. v. President & Fellows of Harvard College*, 33 A2d 167 (R.I. 1943).

2. The trial court concluded that the effect of the tax laws was insufficient to warrant modification. As noted above, a misunderstanding of tax laws or change in such laws have been held sufficient to support a modification. As Judge Learned Hand stated,

> Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions.[10]

Thus, evidence of tax consequences is generally proper for the trial court to consider. However, the trial court did not abuse its discretion in finding that the evidence of tax consequences was insufficient to support modification in this case.

3. The trial court also expressed concern regarding the testimony of the guardian ad litem for the unborn children of Gary and Louis. Generally, a modification must protect the interests of all beneficiaries, including contingent or remainder beneficiaries. For unborn contingent or remainder beneficiaries, a guardian ad litem should be appointed. If, after fully considering the issue, the guardian concludes that the interests of unborn contingent or remainder beneficiaries would not be adversely affected by the modification, he may consent on their behalf. He must, however, give articulable reasons and may not give merely pro forma consent.[11] In this case the guardian ad litem was a tax lawyer who consented on behalf of the unborn contingent beneficiaries. The reasons supporting his consent were described in the briefest form and we cannot conclude the trial court abused its discretion in concluding that the modification would not sufficiently protect the unborn contingent beneficiaries' interests.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 24, 1997.

*Tony Center, Walter N. Cohen,* for appellants.
*William D. Ryals,* for appellees.

---

[10] *Commr. of Internal Revenue v. Newman,* 159 F2d 848, 850-851 (2nd Cir. 1947), *quoted with approval in Commr. of Internal Revenue v. First Security Bank,* 405 U. S. 394, 398, n. 4 (92 SC 1085, 31 LE2d 318) (1972).

[11] See *Leonardini v. Wells Fargo Bank and Union Trust Co.,* 280 P2d 81 (Cal. App. 1955).